Our sixth and final argument of the morning comes in Appeal 24-2014. Dennis Jones v. the Acting Commissioner, I believe, of Social Security. Okay, Mr. Sellers, nice to see you. Good morning. May it please the Court, Counsel, Joseph Sellers on behalf of the appellant Dennis Jones. This case turns on two regulations in the Commissioner's regulations. The first lays out what can constitute a medical opinion under the regulations, and the second lays out specific statements on issues that are reserved to the Commissioner that by definition are inherently unpersuasive. The regulation defining the statements on the issues reserved to the Commissioner is an exhaustive and specific set of language that has precise legal meaning that if adopted by the ALJ from a medical source would surrender the ALJ's authority to make those legal conclusions to the doctors. And the Commissioner has strenuously restricted that type of abdication of authority. The other regulation is broader and less technically defined, and it lays out simply that a statement from a medical source can qualify as an opinion if it satisfies a two-pronged test. First, what the claimant can do despite their physical or mental impairments, and second, whether those physical or mental impairments cause work-related functional restrictions. The opinion at issue in this case by Dr. Runke satisfies that two-pronged test. He opined after examining Mr. Jones that Mr. Jones can only work as a cashier for 20 hours per week and that his physical impairments prevent him from performing the physical functions of that job for any longer than 20 hours per week. That meets both of those prongs and should qualify his statement as a medical opinion. This is an interesting issue. Can I ask you a question just to try to tease the legal part of this out a little bit? So, let's just change one thing, Mr. Sellers, about Dr. Runke's opinion. Okay. And let's say that the limitations that Mr. Jones has would allow him to work zero hours in the grocery store. So, the only edit I want to make, hypothetically, is to take 20 and make it zero. Okay. All right. So, in that situation, I think you would say, well, yeah, you bet Mr. Jones wants that considered because that's pretty definitive that he can't work. If you can work zero, you can't work one hour, you can't work. That would be a compelling statement from a doctor, especially Social Security's own examining doctor. Okay. My question, though, is this. Okay. So, let's suppose that we made that edit, hypothetically. What is an ALJ to do with it, okay, even if you say it's a medical opinion about his capacity to work? So, I'm agreeing with you. Okay. Hypothetically. What's an ALJ to do with it other than to say it's the equivalent of an opinion that he's disabled because he can't work? And that's an issue that's reserved to me. Correct. And I think that's exactly what the ALJ would have to do with it under the regulations because when you limit a claimant to zero work, and I think there's a district court case from this circuit that dealt with a limitation to zero hours of work. Yeah. That is synonymous with a doctor saying my patient is disabled. Okay. That's interesting that you're saying that. So, help us, therefore, draw the line because when we're talking about work, we're just a notional benchmark of 40, right? 40 hours a week, just rounded off at 40. Correct. Okay. So, if he can only work 20, he can't work 40, he can't work full time. So, how do we draw these lines, then, against the backdrop of that hypothetical that's in my mind? I think the issue with the zero hours a week is that it is so close to simply saying my patient is disabled that there is no real distinction between the two. But a doctor saying that my patient can work 20 hours a week, that's all his body will allow him to do, is a substantively different statement because it says he can still do 20 hours per week. He just can't handle more. And that's the first part of that medical opinion test is what can the claimant do? And would you answer that the same way if it was five, for example, and Dr. Runke was saying, I think he can only work an hour a day, five days per week. I think that would still qualify as an opinion so long as the doctor also tied it to the functional physical restrictions. Okay. I got it. And that's, it's a, the regulations do set out a fairly bright line test that if you use this language as a doctor, it's a statement on an issue reserved to the commissioner. If not, with the exception of things that are virtually synonymous with disabled, using the term disabled, as long as you meet that two-pronged test, you are proffering a medical opinion. And any medical opinion in the record needs to be considered by the ALJ and evaluated for persuasiveness. The ALJ did not even acknowledge Dr. Runke's clinical impression in this case. And therefore, any of the government's arguments undermining Dr. Runke's opinion or that it was a statement on an issue reserved to the commissioner are barred by Chenery. And if there are no further questions, I'll reserve the floor. I do have a question. How do we look at this in the context of an ALJ decision where the ALJ did an analysis and came to an RFC that was more restrictive than the doctors? In the sense that if the ALJ had considered, say, Dr. Runke's opinion and said, it's persuasive, but I find the claimant more limited. That this court's more recent case law is pretty clear that if the ALJ finds the claimant more limited than any opinion in the record, then there wouldn't be much harm in not specifically addressing Dr. Runke's opinion. But in this case, that wasn't what happened. The ALJ ignored the opinion and then found Mr. Jones more capable than Dr. Runke opined. And that's why there is clear factual harm in this case, and that's why the ALJ's omission warrants remand. And I'll reserve the rest of my time for rebuttal. Thank you. Very well. We'll hear from Ms. Schwartz. Good morning. May it please the court. My name is Allison Schwartz, and I represent the Commissioner of Social Security. The ALJ in this case issued a 22-page decision fairly considering the record, and relevant here, thoroughly considering Dr. Runke's consultative examination. Notably, Mr. Jones does not object to the ALJ's decision except with regard to this one small point, which is that he believes the ALJ should have evaluated for persuasiveness one part of Dr. Runke's report. And that part states as follows. Progressive pain has been occurring due to associated weight-bearing difficulties and joint strain with limitations of grocery store job to about 20 hours per week maximum. And just going forward, I'm going to call that the 20-hour statement. The 20-hour statement is not a medical opinion that needs to be evaluated for persuasiveness. The governing regulations provide that a medical opinion must, number one, state what a person could do in the workplace, and number two, provide what they could do in the workplace in terms of specific physical, mental, sensory, or environmental limitations. And Dr. Runke's 20-hour statement does not speak to any of that. At best, it's a statement on the issue of disability, which is reserved for the commissioner under the regulations. Can I pause you on that?  Here's what I find hard about it. I think Mr. Sellers makes a fair point that you can read it as a statement on those two prongs that you just articulated. And it basically becomes, how do you want to state it linguistically? So here's what I mean by that. You could read it to say, he's able to do that which is physically required to work in a grocery store for up to 20 hours a week. So whatever he's doing in the grocery store, whatever that entails, he can do that up to 20 hours. That sounds like a description of what he's capable of doing. On the other hand, you could flip it around and say, he cannot work more than 20 hours at the grocery store. Then it's stated as a limitation. It seems to me it's amenable to both constructions. Under either one of those constructions, it would not be deemed a medical opinion under the regulations because there isn't any specific limitations. So for instance, if I were to take your example and say, Mr. Jones could stand for four hours a day. Or Mr. Jones could lift 10 pounds. Or Mr. Jones could only occasionally handle. Those are the specific functional limitations that the medical regulations contemplate in defining what a medical opinion is. The regulations were amended in 2017 to clarify the distinction between objective evidence and opinion evidence on the one hand. And statements that the ALJ and the agency determine in disability cases on the other hand. So under the question that you provided to Mr. Sellers earlier, is there a difference between saying somebody could work part time or saying somebody could work zero hours? The answer to that question is no. Because the regulations specifically set out that a statement that a person can or cannot perform regular and continuing work. That's a quote, regular and continuing work is reserved for the commissioner. Okay, so I want to make sure I get what you're saying then. What if Dr. Runke had said he can work up to 20 hours in the grocery store? I don't remember. I don't know what his job was in the grocery store. He was a cashier. Okay. And he can stand at the cash register or the scanner. He can help people with credit card payments. He can take cash. He can dispense change. So if the grocery store job was just described in terms of what its physical requirements are, would it then be a medical opinion? Because it seems odd to me that the doctor is going to say, I'm a physician. I'm not a social security person. I'm just telling you he can work at the grocery store for 20 hours a week. And you're saying the doctor had to type in here what is physically required of the job he used to perform? Well, that's exactly why the regulations were amended, because a doctor has expertise in certain types of physical limitations. But the ALJ has expertise in whether somebody can work part-time at a grocery store, whether someone can work full-time, what their residual functional capacity is. But if you say all it says here is current grocery store job, can't you say, well, we know what it is. It's a cashier. So it doesn't take a whole bunch of imagination to see what that physically requires of Mr. Jones. Well, that brings up another salient point, which is Dr. Runke doesn't really explain in his opinion what the grocery store job is in terms of physical limitations. So there really isn't a whole lot that an ALJ can do with something like that. If you know the rest of the record, it kind of solves that mystery. We know what he does at the grocery store. Yeah, well, the ALJ considered evidence in detail with regard to what Mr. Jones does at the grocery store, considered his statements, considered the medical evidence as a whole, and might I say also considered Dr. Runke's examination in detail, really considered almost every examination finding. And to be honest, when you look at the consultative examination finding and you're reading that 20-hour statement, it's possible that that statement is even just a recitation of what Mr. Jones told Dr. Runke at the beginning of his examination. Because if you look at the beginning of the CE report, Mr. Jones says to Dr. Runke, I work at the grocery store, but I can only work part-time due to my joint pain. So it's really not clear at all what that statement is supposed to mean. But under either scenario, it isn't something that the ALJ needed to articulate in her decision. And that's especially so given how clearly and thoroughly the ALJ considered all of the other actual opinion evidence that was in the record. And nothing that Mr. Jones stated in his briefing or in his statements here today changed that fact. And I just wanted to point out, reiterate the fact that the ALJ, despite what Mr. Seller said here today, the ALJ far from ignored Dr. Runke's report. The ALJ considered it in detail. And I just want to quickly note that Chenery argument that was raised at the end, that argument really doesn't really make any sense here because we're talking about a regulation that states unequivocally that ALJs need not provide any analysis on a statement reserved for the commissioner. So the ALJ isn't going to say anything about that in her decision because she's following the regulation. So the Chenery doctrine doesn't apply here. Because you view the 20-hour statement as bearing upon the ultimate decision for the commissioner, disability. Is that right?  Why is it not? I think your argument is that if it's considered as in a medical opinion, if, right? And you're saying, well, it's not. You're clear on that. Your top line argument is it's not. But if it's a medical opinion, it's not one that the ALJ has to consider because it's offering an opinion essentially about whether he's disabled or not. That's correct. And it's something that the ALJ would not need to articulate under the reg. So it's hard to contemplate how Chenery even comes into play if the Chenery doctrine is that you could only look at what the ALJ states in her decision. Because this is something that the regulations expressly state the ALJ need not state in her decision. And in any event, the Chenery doctrine doesn't apply here because we're not providing any new rationale. We're just defending against the arguments that are being used to attack this really thorough, detailed decision that's only being challenged really on one small, tiny point. And if the court has no further questions, we request that you affirm the decision. Okay, very well. Thank you. Thank you, Ms. Schwartz. Mr. Sellers. It's hard to understand how this is one small, tiny point in this case. This is SSA's own consultative examiner opining that Mr. Jones cannot work more than 20 hours a week. If his opinion was given weight, even marginally persuasive weight, that is undermining the ALJ's entire analysis. Because it lends further support to Mr. Jones' subjective allocations. It undermines the non-examining source opinions that the ALJ relied upon. And it belies the ALJ's own consideration of Dr. Ronke's objective findings. So tossing this out as a minute point misses the fact that his opinion undermines the ALJ's entire analysis. It is a crucial part of the record. And if it's just dismissed, that renders Mr. Jones' ability to have a full and fair hearing null and void. And the government effectively concedes, as this court pointed out, that there is some interpretive flux to Mr. Ronke's opinion. It could be read this way. It could be read that way. It could be read this way. That doesn't negate the necessity to analyze that clinical impression. It underscores the need for the ALJ to make the factual finding in the first place. Whether the ALJ believed it was an opinion, whether the ALJ believed it was a statement on an issue reserved to the commissioner, or whether the ALJ just thought it was a statement about the severity of Mr. Jones' subjective allegations, and therefore other medical evidence. That's why Chenery applies here. Because it is the ALJ who was required to make that factual finding in the first place, and she didn't. She didn't even acknowledge the paragraph that we're discussing about, except for one final sentence of it. The commissioner cannot now come in and say it doesn't matter because we are making the factual determination in court for the first time. That is violative of the Chenery Doctrine. While the regulations provide that the ALJ need not provide any analysis of statements on issues reserved to the commissioner, that does not mean that the ALJ does not need to make the factual finding that it was a statement on an issue reserved to the commissioner. And the ALJ didn't do that here. And the government's broad interpretation of the term regular or continuing work, as we've discussed in our brief at length, is unworkable in practice. And for all the reasons we've discussed today, we respectfully request the ALJ reverse and remand the ALJ's decision. Thank you. Okay. Mr. Sellers, thanks to you. Ms. Schwartz, thanks to you. We'll take the appeal under advisement. That concludes today's arguments, and the court will be in recess.